# UNITED STATES DISTRICT COURT
for the
District of Guam

**FILED**
DISTRICT COURT OF GUAM
JAN 24 2018
JEANNE G. QUINATA
CLERK OF COURT

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information Associated with (671) 787-4841 Stored at Docomo Pacific, Inc., 890 S. Marine Corps Drive, Tamuning, Guam (See Attachment A)

Case No. 18-00006

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Information Associated with (671) 787-4841 Stored at Docomo Pacific, Inc., 890 S. Marine Corps Drive, Tamuning, Guam. Property is further described in Attachment A.

located in the _____ District of ___Guam___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B which is incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841(a) and 846 | Distribution of Methamphetamine |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

ADAM S. GREY, Task Force Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/24/18

City and state: Hagatna, Guam

*Judge's signature*

JOAQUIN V.E. MANIBUSAN, JR., U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Adam S. Grey, being duly sworn on oath, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Docomo Pacific, Inc., a wireless provider located at 890 S. Marine Corps Drive in Tamuning, Guam. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 2703 (c)(2)(A-F) to require Docomo Pacific, Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts including the contents of communications.

2. I am a Guam Customs & Quarantine Agency (GCQA) Officer assigned to the Drug Enforcement Administration (DEA) Task Force at the DEA Guam Resident Office (GRO) and have been so since employed October of 2008. Prior to my assignment to DEA, I was assigned to GCQA's Contraband Enforcement Team (CET) from 2014 through 2015. I have received training from federal, state, and local law enforcement agencies in the area of narcotic law enforcement procedures and investigative techniques. I have participated in the investigation of cases involving violations of Title 21 of the United States Code and of Guam narcotics laws. I have made or participated in numerous drug-related investigations and arrests, both as a GCQA Officer and DEA Task Force Officer (TFO).

3. I know from training, experience, and discussions with other law enforcement officers that importers and distributors of controlled substances often keep ledgers, bank records,

1

telephone books, receipts, airline tickets, lists of drug customers, photographs, audio/video recordings, items which communicate information, and other papers that relate to the importation, transportation, ordering, purchasing and the distribution of controlled substances and proceeds derived from sales. These records and information are often kept on smart phones, cell phones, laptops, desktop computers, server networks (Cloud), and other electronic devices. I know drug traffickers also keep packaging materials, digital scales, and other affiliated materials for their distribution efforts.

4. I know from my training, experience, and discussions with other law enforcement officers that the trafficking of controlled substances generates large sums of money that require the keeping of detailed records. I have observed hand written notes depicting lists of customers and suppliers complete with telephone numbers. These records are also kept in hand held personal digital assistants (PDA) or similar devices, tablets, smart phones and cellular telephones. These records are kept by drug traffickers whether or not the dealer is in actual possession of controlled substances at any given moment.

5. It is also my opinion, based on training, experience, and observations, that the trafficking of large amounts of controlled substances requires the cooperation and association of a number of people within a drug trafficking organization. As a result, persons who traffic in controlled substances will possess electronic devices and documents that identify other members of the organization such as telephone books, text messages, address books, telephone bills, and documents containing lists of names, cellular telephones, computers, and mobile computer devices.

6. I know from my experience that drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their drugs. These traffickers can

2

maintain these photographs in smart phones, laptop computers, tablets and digital media storage devices. I am also aware that criminals often use cellular telephones to communicate instructions, plans, intentions, drug transactions, and progress of criminal activities by way of audio or text messages. I am aware that evidence of these instructions, plans, and general discussions of criminal activity are sent or received in the form of text messages, incoming and outgoing call histories, or voice messages left in personal voice mail systems. I am familiar with the widely used methods in which text messages are sent and received via third party phone applications commonly referred to as "apps."

7. This affidavit is being submitted for the limited purpose of securing a search warrant. Therefore, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the portable electronic devices described above potentially contain evidence of violations of Title 21, United States Code, Sections 841, 843, 846, and other criminal activities. The specific items to be searched are described as follows:

> The text messages and all peripheral data, content, including subscriber information, call logs, method of payment, voice messages, photographs, videos, emails, International Mobile Equipment Identity (IMEI) number or Electronic Serial Number (ESM) for the cellular telephone, and electronic telephone book assigned to the account database of cellular telephone number identified as (671) 787-4841.

## PROBABLE CAUSE

### EVIDENCE OF DRUG TRAFFICKING ACTIVITIES OF LUCIANA PEREIRA

8. On March 17, 2017, DEA agents conducted a controlled purchase from Luciana PEREIRA (PEREIRA) using a DEA confidential source (CS). The CS purchased approximately

3

two (2) grams of methamphetamine for $1000. A second purchase was also conducted on April 13, 2017 where the same CS purchased approximately two (2) grams for $1000.

9. On January 3, 2018, the CS contacted PEREIRA through Facebook.com's messenger application, where they discussed purchasing methamphetamine from PEREIRA. During the conversation, PEREIRA mentioned that she was "still in business" and agreed to sell a "five pack" or five (5) grams of methamphetamine to the CS for one thousand seven hundred and fifty dollars ($1750). PEREIRA also gave the CS her most recent cellular phone number, (671) 787-4841.

10. On January 16, 2018, DEA agents instructed the CS to place a call to PEREIRA on her cell phone at (671) 787-4841. PEREIRA answered and informed the CS that she will sell him/her the "five pack" for one thousand five hundred dollars ($1500).

11. On January 17, 2018, DEA agents conducted a controlled purchase operation. During the operation, surveillance units monitored the CS as he/she contacted PEREIRA on her cell phone at (671) 787-4841. PEREIRA answered and informed the CS that, a male individual she referred to as "David Jr.", would meet the CS at PEREIRA's residence with the methamphetamine. DEA agents believe David Jr. to be David S. CRUZ Jr. (CRUZ). Shortly after, the CS arrived at PEREIRA's residence where he/she met with CRUZ. According to the CS, he/she observed CRUZ disassemble what appeared to be a hairbrush. The CS then observed CRUZ pull out a clear plastic zip top bag, containing the methamphetamine from the hairbrush, which he then exchanged with the Official Advance Funds given to the CS by DEA agents.

12. Shortly after, DEA agents maintained surveillance of the CS as he/she departed PEREIRA's residence and later met at a pre-designated location. The CS placed another call to PEREIRA, who answered. The CS informed PEREIRA that he/she had gotten the

4

methamphetamine from CRUZ and PEREIRA acknowledged. The substance was field tested with results of presumptive positive for the presence of methamphetamine.

13. Agents learned that Docomo Pacific is a company that provides cellular telephone access to the general public and that stored electronic communications and texts for Docomo Pacific, Inc. subscribers may be located on the computers/servers of Docomo Pacific, Inc. Further, I am aware that computers located at Docomo Pacific, Inc. contain information and other stored electronic information.

14. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging."

15. Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Docomo Pacific, Inc. for periods incident to and following their transmission.

16. Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may

5

also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

17. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

18. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

19. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the

length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

20. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

21. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) & 2703(c)(1)(A), by using the warrant to require Docomo Pacific, Inc. to disclose to the government copies of the records and other information (including the content of texts and communications) described in Attachment A. Upon receipt of the information described in Attachment A, government-authorized persons will review that information to locate the items described in Attachment B.

## CONCLUSION

22. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in the control of Docomo Pacific, Inc. there exists evidence of a crime. Accordingly, a search warrant is respectfully requested. This Court has jurisdiction to issue the requested warrant because it is "a court with jurisdiction over the offense under investigation" as defined by 18 U.S.C. § 2711, 18 U.S.C. § 2703(a), (b)(1)(A) & (c)(1)(A). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR AN ORDER TO DELAY NOTIFICATION

23. It is respectfully requested that this Court, pursuant to 18 U.S.C. § 2705, issue an order delaying the notification required under 18 U.S.C. § 2703(b) for a period of ninety (90) days, because there is reason to believe that notification of the existence of the order concerning this search warrant would seriously jeopardize the investigation now in progress.

## REQUEST FOR A NONDISCLOSURE ORDER

24. It is respectfully requested that this Court, pursuant to 18 U.S.C. § 2705(a)(A), issue a nondisclosure order to Docomo Pacific, Inc. for a period of ninety (90) days, because disclosure to any individual or entity in any matter related to this search warrant would seriously jeopardize the investigation now in progress.

FURTHER AFFIANT SAYETH NAUGHT.

Adam S. Grey
Task Force Officer
Drug Enforcement Administration

8

## **ATTACHMENT A**

This warrant applies to all information associated with cellular phone number (671) 787-4841 that is stored at premises owned, maintained, controlled, or operated by Docomo Pacific, Inc., a wireless provider located at 890 S. Marine Corps Drive in Tamuning, Guam.

# ATTACHMENT B

## INFORMATION TO BE DISCLOSED BY DOCOMO PACIFIC, INC.

Use following date range for the information requested below from December 1, 2017 to the present date.

1. Text messages, MMS messages, call logs, voice mails, records, receipts, and notes.

2. Lists of contacts and related identifying information, for the account holder.

3. Evidence of user attribution showing who used or owned the telephone number that is the subject of this warrant from December 1, 2017, to the present date.